

**ORDERED in the Southern District of Florida on January 25, 2018.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                            **CASE NO.: 16-10398-EPK**
                                                  **CHAPTER 11**
**TUSCANY ENERGY, LLC,**

      **Debtor.**
_____/

**ARMSTRONG BANK,**

      **Plaintiff,**

v.                                                **ADV. PROC. NO.: 17-01380-EPK**

**SHRAIBERG, LANDAU & PAGE, P.A.**
**and TUSCANY ENERGY, LLC,**

      **Defendants.**
_____/

### <u>ORDER DISMISSING ADVERSARY PROCEEDING</u>

Prior to filing its chapter 11 petition, Tuscany Energy, LLC paid a retainer to its

bankruptcy counsel, Shraiberg, Landau & Page, P.A.  In the present complaint the plaintiff,

Armstrong Bank, asks this Court to determine that it had a valid, enforceable, and perfected

lien in the funds used to pay the retainer, that the debtor's counsel converted and assisted

the debtor in converting the retainer funds, that the debtor's counsel tortiously interfered with the loan agreements between the debtor and Armstrong Bank in requesting and receiving the retainer, and that the debtor's counsel was unjustly enriched by payment of the retainer. Armstrong Bank does not seek a money judgment. Armstrong Bank seeks an order directing the debtor's counsel to return the retainer funds to the bankruptcy estate, ruling that the unearned portion of the retainer as of the bankruptcy petition date is cash collateral of Armstrong Bank, and determining that Armstrong Bank has a first priority lien in those funds or, in the alternative, that any claim of the debtor's counsel to those funds be equitably subordinated to the claim of Armstrong Bank. Armstrong Bank seeks related declaratory relief. Inevitably, Armstrong Bank will seek an order directing that the portion of the retainer that remained unearned on the petition date be paid to Armstrong Bank in partial satisfaction of its claim, although that relief is not requested in the complaint.

Because all of the relief requested in this adversary proceeding, although presented in various forms, is aimed at disposition of a retainer that was undisputedly property of the bankruptcy estate, this adversary proceeding is a core matter in its entirety, subject to entry of final orders and judgment by this Court. 28 U.S.C. §§ 1334(a), (b) and (e); 28 U.S.C. §§ 157(a) and (b); *Bakst v. Smokemist, Inc. (In re Gladstone)*, 513 B.R. 149, 153-156 (Bankr. S.D. Fla. 2014) (discussing bankruptcy jurisdiction and the power of the bankruptcy court to enter final orders); *Fannie Mae v. CCH John Eagan II Homes, L.P. (In re CCH John Eagan II Homes, L.P.)*, Adv. Proc. No. 16-01183-EPK, 2016 Bankr. LEXIS 3758, at *11-*20 (Bankr. S.D. Fla. Oct. 17, 2016) (addressing bankruptcy jurisdiction over property of the estate and related issues). Because the relief requested is limited to declaratory and injunctive relief with regard to property of the estate, and is thus entirely equitable in nature, none of the claims presented are subject to trial by jury. *See Bakst v. Bank Leumi, USA (In re D.I.T., Inc.)*, 575 B.R. 534 (Bankr. S.D. Fla. 2017). Although the main bankruptcy case was

dismissed on October 2, 2017, the Court properly retained jurisdiction to address potential disputes regarding the retainer.  ECF No. 285, Case No. 16-10398-EPK.

The Court has carefully reviewed the defendants' motion to dismiss [ECF No. 7] and the related response and reply [ECF Nos. 18 and 25].  Based on Armstrong Bank's own allegations in the complaint, for the reasons stated below, Armstrong Bank is not entitled to any of the relief it requests in this adversary proceeding.  The motion to dismiss will be granted and the complaint will be dismissed.  Because Armstrong Bank did not seek leave to amend its complaint consistent with precedent in this circuit, the dismissal will be with prejudice.

To proceed in a chapter 11 case, a corporate debtor must be represented by counsel. Without counsel, the case soon will be dismissed. *See Potter v. Altman*, 647 Fed. Appx. 974, 976 (11th Cir. 2016); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).  It is the norm that a corporate chapter 11 debtor pays a retainer to its bankruptcy counsel prior to filing the petition.  Experienced bankruptcy lawyers rarely undertake representation of a debtor-in-possession without a retainer.  Indeed, the Court might doubt the competence of a bankruptcy lawyer who accepts an engagement to represent a chapter 11 debtor without a retainer or similar assurance of payment.  To do so would put counsel completely at risk for counsel's fee based on the success or failure of the case as a whole.  So, a corporate chapter 11 debtor is required to have counsel and that counsel almost always must be paid a retainer.

More than 5,700 new chapter 11 cases were filed last year. There are more than 400 chapter 11 cases pending in this district alone.  Why, then, is it so difficult to find a reported decision where a secured creditor claimed that funds used to pay a retainer to debtor's counsel remained subject to its pre-bankruptcy security interest?  The answer is that, except in extremely unusual circumstances, the secured creditor retains no interest at all in funds paid to debtor's counsel as a pre-petition retainer. U.C.C. section 9-332, uniformly enacted in the

states, provides that a transferee of money, or funds from a deposit account, takes free of any security interest "unless the transferee acts in collusion with the debtor in violating the rights of the secured party." *E.g.*, Fla. Stat. § 679.332. Even if counsel knows that the debtor is in default of its loan obligations and that the secured creditor claims a lien on the funds used to pay a retainer, which is invariably the case, requesting a pre-petition retainer for services to be rendered in a chapter 11 case does not by itself constitute collusion as contemplated in the statute. It is not surprising, then, that almost no secured creditor claims that its pre-bankruptcy security interest continues to attach to the retainer paid to debtor's counsel and that there are almost no reported decisions on the issue.

In the Court's experience, nearly every corporate chapter 11 debtor has a lender with a blanket lien on its assets, including deposit accounts, and has defaulted on the loan before the bankruptcy was filed. That default is often the reason for the filing. The retainer is almost universally paid from an account that is subject to the lender's blanket lien. In many cases, although not in this case, the retainer is paid from an account maintained at the lender itself. If Armstrong Bank's allegations here are sufficient to support a claim of collusion, then nearly every retainer paid to proposed counsel for a chapter 11 debtor remains subject to the secured lender's lien, is cash collateral, and likely cannot be used for its intended purpose. If Armstrong Bank's view is correct, then almost no corporate entity would be able to pursue relief under chapter 11.

According to the complaint, Armstrong Bank had a lending relationship with the debtor based on a loan that Armstrong Bank acquired from the debtor's original lender. Armstrong Bank alleges that, prior to the filing of this bankruptcy case, Armstrong Bank had a lien on essentially all assets of the debtor, including its deposit accounts. Armstrong Bank claims it perfected that lien by filing U.C.C. financing statements in the proper location.

This is the only allegation in the complaint in connection with perfection of Armstrong Bank's security interest in the SunTrust Bank account used to pay the retainer.

Armstrong Bank alleges that the debtor was in default of its obligations under the parties' loan documents in October 2015. Armstrong Bank alleges that debtor's counsel knew of these defaults and knew of Armstrong Bank's lien prior to receiving the retainer the following month, in November 2015. These are the only relevant allegations with regard to the state of mind of the debtor and debtor's counsel at the time the retainer was requested and paid.

In November 2015, about two months prior to filing its bankruptcy petition, the debtor paid a retainer to the debtor's counsel in two installments aggregating $200,000.00. According to the complaint, $10,000.00 of that sum was used to pay debtor's counsel for services rendered prior to the filing of this case. Although not specifically stated in the complaint, this would leave $190,000.00 as a retainer for services to be rendered during the bankruptcy case. According to the complaint, the debtor also paid to debtor's counsel a costs retainer in the amount of $1,717.00, which apparently was used to pay the filing fee. This sum does not appear to be at issue in the complaint. According to the complaint, the debtor and debtor's counsel entered into an engagement agreement that treated the retainer as a traditional security retainer, to be held for payment of legal fees and expenses yet to accrue.

In January 2016, the debtor filed its voluntary chapter 11 petition and the following month the debtor obtained authority from this Court to retain debtor's counsel for purposes of its bankruptcy case. Debtor's counsel disclosed the retainer to the Court and all parties in interest.

About nine months later, in September 2016, debtor's counsel sought approval of compensation and reimbursement of expenses on an interim basis and permission to apply the retainer to approved fees and expenses. Armstrong Bank objected on the ground that, in

its view, the retainer was cash collateral subject to Armstrong Bank's lien and the debtor could not provide adequate protection for use of the alleged cash collateral. The Court held a hearing on the matter, permitted the parties to brief their positions, and entered a comprehensive order overruling the objection of Armstrong Bank and authorizing application of the retainer to approved fees and expenses of debtor's counsel. *In re Tuscany Energy, LLC*, 561 B.R. 910 (Bankr. S.D. Fla. 2016). Among other things, the Court ruled that upon payment of the retainer to debtor's counsel Armstrong Bank had no interest whatsoever in the funds used to pay the retainer. Thus, as of the moment this bankruptcy case was filed, the retainer was subject only to the lien of debtor's counsel for payment of fees and expenses yet to be incurred.

These findings were necessary to the Court's order approving payment of fees and expenses of debtor's counsel on an interim basis. Nearly all of the other requirements for issue preclusion are obviously met by the Court's prior ruling. In the present motion to dismiss, debtor's counsel does not argue that this Court's prior order is preclusive on the issues presented in the current adversary complaint. Orders on interim fee applications are not considered final orders for purposes of appeal, and thus for purposes of claim preclusion, because interim approval of fees and expenses remains subject to submission and review of a final fee application. On the other hand, "[i]t is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion." *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000). Because the parties were fully heard at that time, and the Court made detailed findings and rulings regarding Armstrong Bank's claimed lien in the retainer funds, the Court's prior ruling was "sufficiently firm to be accorded conclusive effect." *Id.* at 1339 n.47 (quoting Restatement (Second) Judgments § 13). However, as the motion to dismiss does not present this argument, the Court does not rely on it to rule here.

6

In response to the motion to dismiss, Armstrong Bank argues that when the Court previously ruled on issues relating to Armstrong Bank's claimed lien in the retainer funds the Court did so in the context of a contested matter, rather than in an adversary proceeding, which Armstrong Bank argues was required by the Bankruptcy Rules. Fed. R. Bankr. P. 7001(2) (requiring an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property").  Even if an adversary proceeding was required, this argument is a red herring.  Assuming the Court's prior ruling had preclusive effect, if an adversary proceeding was required then Armstrong Bank waived that argument by failing to appeal. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268-72 (2010); *Nationstar Mortg., LLC v. Iliceto (In re Iliceto)*, No. 16-16815, 2017 U.S. App. LEXIS 24895, at *21-*23 (11th Cir. Dec. 11, 2017).  If the Court's prior order does not have preclusive effect, then Armstrong Bank now has the advantage of the adversary proceeding it desires.

It appears undisputed that, at the time the debtor paid the retainer to debtor's counsel, Armstrong Bank had a security interest in the debtor's deposit account at SunTrust Bank. Fla. Stat. § 679.2031(2) (providing requirements for an enforceable security interest). However, Armstrong Bank's security interest in the debtor's account at SunTrust Bank was not perfected.  Armstrong Bank alleges only that it filed U.C.C. financing statements to perfect its liens.  A security interest in a deposit account cannot be perfected by the filing of a financing statement.  A security interest in a deposit account may only be perfected by control over that deposit account. *See* Fla. Stat. §§ 679.3121(2)(a) and 679.3141.  In order to obtain control over a deposit account for purposes of perfection, (a) the secured creditor must be the depository bank at which the account is maintained, (b) there must be a control agreement among the secured creditor, the depository bank, and the debtor, requiring the depository bank to comply with the secured creditor's instructions, or (c) the secured creditor must be the depository bank's customer with regard to the account. Fla. Stat. § 679.1041. The

account that was the source of the retainer was not at Armstrong Bank. Armstrong Bank does not allege that there was any control agreement. Armstrong Bank does not allege that it was the customer of SunTrust Bank on the subject account. And so Armstrong Bank did not have a perfected security interest in the debtor's account at SunTrust Bank. Because Armstrong Bank's security interest in the SunTrust Bank account was not perfected, Armstrong Bank also did not have a perfected security interest in the cash transferred from the SunTrust Bank account to debtor's counsel, which became the retainer. *See* Fla. Stat. § 679.3151(3).

In its response, Armstrong Bank argues that its bald assertion that it held a perfected security interest in the SunTrust Bank account is sufficient to survive the motion to dismiss. This is not the case. Armstrong Bank has the burden of proof on the issue of perfection. If Armstrong Bank seeks to show that it had a perfected security interest in the SunTrust Bank account, it must allege in its complaint facts that if proven would support that finding. A security interest in a deposit account may only be perfected by control. Thus, Armstrong Bank must show that it had control over the SunTrust Bank account. Armstrong Bank included no such allegations in its complaint.

In contrast, based on Armstrong Bank's own allegations, as of the filing of this case debtor's counsel had a perfected security interest in the retainer. Debtor's counsel satisfied all of the requirements to obtain an enforceable security interest in the retainer. Fla. Stat. § 679.2031. Value was given as debtor's counsel promised to represent the debtor in this bankruptcy case. At the time the debtor paid the retainer the debtor owned the funds in its SunTrust Bank account, the source of the retainer. Debtor's counsel and the debtor entered into an engagement agreement that treated the retainer as a traditional security retainer to be used to pay later accruing fees and expenses. Debtor's counsel retained possession of the retainer, which it eventually applied pursuant to an order of this Court. Finally, debtor's

counsel's security interest in the retainer was perfected by possession. Fla. Stat. §§ 679.3131(1), 679.3121(2)(a), 679.3121(2)(c), and 679.3141. *See also In re Outdoor RV & Marine, LLC,* 2011 Bankr. LEXIS 1698 at \*20-\*25 (Bankr. D.S.C. May 10, 2011); *In re Advanced Imaging Techs., Inc.*, 306 B.R. 677, 680-81 (Bankr. W.D. Wash. 2003); *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr. N.D. Ill. 1988).

As of the date the debtor filed this case, even if Armstrong Bank still had a security interest in the retainer, Armstrong Bank's unperfected security interest was junior to the perfected security interest held by debtor's counsel.  Fla. Stat. § 679.322(1)(b).

Most importantly for purposes of this case, even if Armstrong Bank had perfected its security interest in the SunTrust Bank account by control, when the retainer was paid to debtor's counsel Armstrong Bank lost any and all interest it held in the funds used to pay the retainer.  Section 679.332(2), Florida Statutes provides: "A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party."  Thus, unless debtor's counsel acted in collusion with the debtor in violating the rights of Armstrong Bank, upon payment of the retainer to debtor's counsel Armstrong Bank lost its security interest in such funds.

Armstrong Bank alleges that debtor's counsel knew that the debtor was in default of its loan obligations with Armstrong Bank, and that debtor's counsel knew that Armstrong Bank had a blanket lien on the debtor's assets, including deposit accounts.  Armstrong Bank argues that having such knowledge, and then asking for and receiving the retainer, is sufficient to constitute collusion within the meaning of U.C.C. section 9-332.  In the complaint, Armstrong Bank uses slightly more colorful language to describe these basic facts.  But this is nevertheless Armstrong Bank's entire argument that debtor's counsel colluded with the debtor to violate the rights of Armstrong Bank.

The official comment to U.C.C. section 9-332 (as adopted by the State of Florida) sheds light on what is meant by the term "collusion" in this context. The U.C.C. favors the finality of payments, severely limiting the ability to pursue a transferee such as debtor's counsel. The recipient of transferred funds need not give value to the debtor to be protected by section 9-332. Indeed, the recipient need not act in reliance on the transfer in any way. The only exception is where the recipient is itself a "bad actor." The official comment to section 9-332 draws a parallel to the collusion provisions in U.C.C. sections 8-115 and 8-503(e). As the official comments to those provisions explain, collusion involves being complicit in a wrongdoing, and is explicitly compared to aiding and abetting an intentional tort. To be found in collusion, the recipient of the transfer must have "affirmatively engaged in wrongful conduct." U.C.C. § 8-503(e) cmt. 3 (Fla. Stat. § 678.5031). Mere knowledge of the rights of others and that the transferor's act is wrongful is not sufficient to support a claim of collusion. *Id.*; U.C.C. § 8-115 cmt. 5 (Fla. Stat. § 678.1151).

In its response, Armstrong Bank argues that the lack of collusion is an affirmative defense and so should not support relief at the motion to dismiss stage. This is not the case. Armstrong Bank has the burden of proving its claim that the retainer remained subject to Armstrong Bank's lien even after it was paid to debtor's counsel. In light of the clear language of section 9-332, as soon as the debtor transferred funds from its account at SunTrust Bank those funds were free of any security interest of Armstrong Bank unless the transferee, here debtor's counsel, acted in collusion with the debtor to violate the rights of Armstrong Bank. To prove that it has any interest at all in the retainer, Armstrong Bank has the burden of showing that there was collusion within the meaning of the statute. It is apparent from the complaint that Armstrong Bank knows this, as it attempted to allege that there was collusion.

While Armstrong Bank suggests that the actions of debtor's counsel were "inequitable," there are no specific factual allegations to support such blanket statements. That debtor's counsel represented the debtor in a prior chapter 11 case does not augment the un-remarkable facts of this case. The allegations in the complaint do not support a finding that debtor's counsel colluded with the debtor in violating the rights of Armstrong Bank. Consequently, at the time this bankruptcy case was filed, Armstrong Bank had no interest whatsoever in the retainer.

Because Armstrong Bank had not perfected its security interest in the SunTrust Bank account, even if funds remained in that account when this bankruptcy case was filed Armstrong Bank's lien would have been subject to avoidance under 11 U.S.C. § 544. The debtor could have used the SunTrust Bank account to pay its administrative expenses, including approved fees and expenses of debtor's counsel. Thus, under the particular circumstances of this case, even if debtor's counsel had not received the retainer, Armstrong Bank would not have the benefit of the funds. It is difficult to see how debtor's counsel could have colluded with the debtor to deny Armstrong Bank a security interest that was not perfected and would not have existed in this bankruptcy case.

In the first count of the complaint, Armstrong Bank argues that debtor's counsel converted assets of Armstrong Bank when counsel sought and received the retainer. This claim focuses on the funds used to pay the retainer. But Armstrong Bank did not have a sufficient property interest in those funds to support a claim of conversion. Armstrong Bank did not own the funds. Armstrong Bank did not have possession of or control over the funds. Armstrong Bank had only an unperfected security interest in the SunTrust Bank account from which the funds were paid. For a security interest to support a claim of conversion, the secured creditor must have a present right to possession of the collateral. *Bel-Bel Int'l Corp. v. Community Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998). Armstrong Bank

argues that it had a right to possession of its collateral as a result of the default on its loan.[1] Absent judicial action, U.C.C. section 9-607 provides the exclusive remedies for realization on a deposit account subject to a security interest, depending on the method of control used to perfect the security interest.  Here, Armstrong Bank never perfected its security interest in the SunTrust Bank account, so Armstrong Bank did not have the benefit of section 9-607. Indeed, SunTrust Bank owed no obligation to obey Armstrong Bank.  U.C.C. § 9-607 cmt. 7 (Fla. Stat. § 679.607).  To realize on its lien on the SunTrust Bank account, Armstrong Bank would have had to file suit and obtain an appropriate judgment. *Id.* and § 9-601.  At the time the retainer was paid, Armstrong Bank had no present right to possession of the debtor's account at SunTrust Bank or any funds in that account.  Under applicable law, Armstrong Bank's distant connection with the funds used to pay the retainer does not sustain a claim based in conversion.

In the second count of the complaint, Armstrong Bank argues that debtor's counsel tortiously interfered with Armstrong Bank's loan agreement with the debtor by causing the debtor to pay the retainer.  A claim for tortious interference with contract must allege that the act of interference caused a default under the agreement.  *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397-98 (Fla. 1st DCA 1992) (citing *Dade Enterprises, Inc. v. Wometco Theatres, Inc.*, 160 So. 209, 210 (Fla. 1935)).  Armstrong Bank does not allege a specific default under its loan agreements arising from the payment of the retainer.  In its response, Armstrong Bank argues that it is sufficient to allege that Armstrong Bank had a blanket lien on the debtor's assets and that debtor's counsel asked for and obtained a retainer from an account subject to Armstrong Bank's lien.  But there is no allegation in the complaint that would lead

---

[1] Armstrong Bank cited U.C.C. section 9-606, which clearly does not apply.  In its reply, debtor's counsel states that Armstrong Bank intended to cite section 9-601.  It is possible that Armstrong Bank intended to cite section 9-609.  Neither provision is helpful to Armstrong Bank.

the Court to conclude that this resulted in a specific default under any agreement between the debtor and Armstrong Bank. In addition, a claim for tortious interference with contract must be based on an intentional act done with the aim, at least in part, of interfering with the rights of another. *Id.* Armstrong Bank alleges that debtor's counsel intentionally interfered with Armstrong Bank's security interest by asking the debtor to pay the retainer. But based solely on Armstrong Bank's own allegations, the debtor paid the retainer in order to obtain counsel required for a corporate entity to prosecute a chapter 11 case. The debtor was attempting to stabilize its financial condition by seeking relief in this Court. No other purpose can be gleaned from the complaint. The facts alleged in the complaint do not support a claim of tortious interference with contract.

In the third count of the complaint, Armstrong Bank argues that debtor's counsel was unjustly enriched by payment of the retainer. To support a claim based in unjust enrichment, the plaintiff must have conferred a direct benefit on the defendant. *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994) (citation omitted). Armstrong Bank cites case law to the effect that the benefit may be conferred through an intermediary. Yet here Armstrong Bank did not confer a benefit on the debtor's counsel via the debtor. The debtor itself conferred that benefit. In any case, the allegations in the complaint do not lead to a finding that debtor's counsel was unjustly enriched by the retainer. Debtor's counsel agreed to represent the debtor in its chapter 11 case subject to approval of fees and expenses by this Court. The debtor paid a retainer. There is nothing inequitable about this conduct. Indeed, it is the norm. The facts alleged in the complaint do not support a claim based in unjust enrichment.

Armstrong Bank's claims based in conversion, tortious interference with contract, and unjust enrichment are due to be dismissed for another, independent reason. U.C.C. section 9-332 provides a high bar to a secured creditor's pursuit of a transferee from a deposit account

13

subject to the secured creditor's lien.  The transferee can be held liable only if the transferee colluded with the debtor to violate the secured creditor's rights.  To permit pursuit of an alternative claim requiring lesser proof would significantly undermine the collusion standard required under the statute.  For this reason, it has been held that the provisions of Article 9 impliedly prohibit alternative claims against a transferee or competing secured creditor, such as claims based in conversion or tortious interference. *U.S. Claims, Inc., v. Flomenhaft*, 519 F. Supp. 2d 532, 535-40 (E.D. Penn. 2007); *Blanken v. Ky. Highlands Inv. Corp.*, 2016 U.S. Dist. LEXIS 7992 (E.D. Ky. Jan. 25, 2016).  Indeed, the very structure of Article 9 is designed to protect the party with priority under the statute, in this case debtor's counsel. *Platte Valley Bank v. Tetra Fin. Group, LLC*, 682 F.3d 1078, 1087 (8th Cir. 2012).  Armstrong Bank cannot evade the requirements of section 9-332 by cloaking its claims in alternative theories.[2] Because the allegations in the complaint do not support a finding of collusion, these alternative claims must fail.[3]

In the fourth count of the complaint, Armstrong Bank seeks a declaratory judgment to the effect that the unearned portion of the retainer as of the petition date (which the Court assumes was $190,000.00) was property of the bankruptcy estate.  No one disputes this obvious fact.  Thus, there is no controversy that supports the request for a declaratory judgment.

In the fifth count of the complaint, Armstrong Bank seeks a declaratory judgment to the effect that the unearned portion of the retainer was Armstrong Bank's cash collateral as

[2] This analysis likely also applies to Armstrong Bank's equitable subordination claim, addressed below. Because Armstrong Bank's equitable subordination claim is due to be dismissed for other reasons, it is not necessary for the Court to address the issue.
[3] Further, Armstrong Bank's claims stated in conversion, tortious interference with contract, and unjust enrichment do not, as a matter of law, support the relief requested in the complaint.  Such claims culminate in money judgments, not the equitable relief requested by Armstrong Bank.  There is a complete disconnect between these causes of action and the end goal of Armstrong Bank, the return of the unearned retainer to the bankruptcy estate subject to Armstrong Bank's claim.

Armstrong Bank retained a security interest in the unearned retainer after it became property of the estate. In the first alternative sixth count of the complaint, Armstrong Bank seeks a declaratory judgment to the effect that its interest in the retainer is superior to that of debtor's counsel. To the contrary, as discussed above, Armstrong Bank had no interest at all in the retainer after it was paid to debtor's counsel, and so had no cash collateral interest in the retainer that could be senior to the perfected lien of debtor's counsel.

In the second alternative sixth count of the complaint, Armstrong Bank argues that debtor's counsel acted inequitably in requesting and receiving the retainer and that any interest of debtor's counsel in the retainer should be equitably subordinated to Armstrong Bank's interest in the retainer. First, Armstrong Bank had no interest in the retainer when this bankruptcy case was filed, and so there is no interest to subordinate to. Second, the allegations in the complaint indicate only that debtor's counsel knew of Armstrong Bank's lien on the SunTrust Bank account, that debtor's counsel knew that the debtor was in default of its obligations under the loan agreements, and that debtor's counsel sought and obtained a retainer that the debtor paid from the SunTrust Bank account. Armstrong Bank's use of colorful terms, such as "siphoning," does not change the true nature of the facts of this case. There is nothing atypical about debtor's counsel requesting and the debtor paying a retainer to its proposed bankruptcy counsel. Even if Armstrong Bank retained an interest in the retainer, the facts alleged in the complaint do not support a claim based in equitable subordination.[4]

Armstrong Bank has not requested, by separate motion or otherwise, leave to amend the complaint in this adversary proceeding. The Court is not required to grant leave to amend

---

[4] In its response, Armstrong Bank suggests that debtor's counsel failed to disclose all of its connections with creditors when the debtor sought authority to retain debtor's counsel in this case. To begin with, this is not alleged in the complaint. In any case, debtor's counsel filed the required disclosures and was transparent about its history with the debtor and the debtor's creditors.

*sua sponte. In re Rollaguard Sec., LLC,* 570 B.R. 859, 887 (Bankr. S.D. Fla. 2017) (citing Eleventh Circuit precedent and other cases).   Accordingly, the Court will dismiss the complaint with prejudice.

## ORDER

For the foregoing reasons, the Court ORDERS AND ADJUDGES that the *Motion to Dismiss Complaint* [ECF No. 7] is GRANTED and the complaint [ECF No. 1, Adv. Proc. No. 17-01380-EPK] is DISMISSED in its entirety with prejudice.  The Court will enter judgment in favor of the defendants.

###

Copies Furnished To:

Patrick R. Dorsey, Esq.

*Patrick R. Dorsey, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*